```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF INDIANA
                    HAMMOND DIVISION


GEORGE HUMPHREY and              )
AMANDA HUMPHREY,                 )
                                 )
Plaintiffs,                      )
                                 )
vs.                              )    NO. 2:05-CV-36
                                 )
FOUNDERS INSURANCE COMPANY,      )
                                 )
Defendant.                       )
```

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Defendant, Founders Insurance Company, on October 14, 2005. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**. The Clerk is **ORDERED** to **DISMISS** this case with prejudice.

BACKGROUND

On January 28, 2005, Plaintiffs, George Humphrey and Amanda Humphrey, filed a complaint seeking compensatory and punitive damages against Founders Insurance Company ("Founders"). In 2000, George Humphrey ("Humphrey") was injured when his automobile was struck by an automobile being driven by Darren Clanton ("Clanton"). Clanton, who was insured by Founders at the time, died in the accident. Notwithstanding the fact that Clanton's policy was insufficient to

cover the costs of Humphrey's injuries, Humphrey's attorney offered to settle Humphrey's claim for the policy limits.  However, a settlement was never reached.

Then, in 2001, Humphrey filed a lawsuit against Clanton's estate and reached an agreed judgment in the amount of $787,500.  Clanton's estate then assigned any claims it had against Founders to Plaintiffs in exchange for a covenant not enforce the judgment against Clanton's estate.  Plaintiffs have brought claims against Founders alleging that Founders breached both its duty to settle Humphrey's claim on behalf of Clanton and its fiduciary duty to Clanton.

On October 14, 2005, Founders filed the instant motion pursuant to Federal Rule of Civil Procedure 56(c).  Defendant argues there are no genuine issues of material fact and that it is entitled to judgment as a matter of law because: (1) Founders' conduct did not amount to a breach of the duties it owed to Clanton; (2) the Agreed Judgment cannot serve as the basis for the Humphreys' claims; (3) the terms of Clanton's insurance policy preclude any recovery by the Humphreys; (4) the Humphreys' lawsuit was not timely filed; and (5) there is no evidence to support punitive damages.

Plaintiffs responded on November 14, 2005, and argue that there are genuine issues of material fact with respect to the following: (1) whether Founders' breached its duty to settle; (2) whether Founders' breach resulted in damages to Clanton; (3) whether the Agreed Judgment may serve as a basis for the Humphreys' claims; and (4) whether

Founders' conduct entitles the Humphreys to punitive damages. Plaintiffs also argue that the terms of the insurance policy do not preclude recovery, Founders was not prejudiced by the Agreed Judgment, and Plaintiffs' lawsuit was timely filed. Finally, Plaintiffs' response raises an issue concerning local rule 7.1(d), which limits the length of briefs to 25 pages unless permission from the Court is received. (N.D. Ind. L.R. 7.1(d).) Although Founders' brief is in violation of the rule, the interests of justice warrant the Court entertaining the brief in whole; especially, in the absence of any claim that Defendant's conduct prejudiced Plaintiffs.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at

255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential

element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Facts

On September 15, 2000, an automobile accident occurred between Clanton and Humphrey in Gary, Indiana.  (Joint Stip. ¶ 1.)  Clanton's vehicle veered left of center, into oncoming traffic, and struck Humphrey's vehicle.  (Joint Stip. ¶ 1.)  Clanton was killed in the accident.  (Joint Stip. ¶ 2.)  At the time of the accident, Clanton had an automobile insurance policy with Founders that provided for liability coverage in the amount of $25,000.  (Joint Stip. ¶ 3; Joint Stip. Ex. A.)

On November 6, 2000, Nancy Gargano ("Gargano"), a Senior Claim Analyst with Founders, was contacted by Humphrey's attorney, Fred Hadley ("Hadley").  (Joint Stip. ¶ 4.)  Hadley sent a letter to Gargano, dated November 6, 2000, in which he requested that Founders make an immediate coverage determination.  (Joint Stip. Ex. B.)  On November 15, 2000, Hadley sent another letter to Gargano and imposed a settlement deadline of November 17, 2000, during which time Humphrey would accept the policy limit of $25,000.  (Joint Stip ¶ 6; Joint

Stip. Ex. C.)  Gargano then contacted Hadley on November 16, 2000, and informed him that Founders would accept coverage for the loss but that the November 17, 2000, deadline did not provide Founders with reasonable time to evaluate the settlement demand.  (Joint Stip. ¶ 7; Joint Stip. Ex. D.)  Gargano also requested that Hadley provide Founders with medical records with respect to the claim.  (Joint Stip. ¶ 7; Joint Stip. Ex. D.)

Hadley responded to Gargano's request on November 21, 2000, and provided Founders a copy of a medical bill in the amount of $60,263.31.  (Joint Stip. ¶ 8; Joint Stip. Ex. E.)  In addition, Hadley requested that Founders provide a written offer of the policy limits at its earliest convenience.  (Joint Stip. Ex. E.)  On November 30, 2000, Gargano sent a letter to Hadley informing him that Founders was processing its injury evaluation for Humphrey and that a settlement decision would be made in the "very near future." (Plaintiffs' Ex. 1.)  On December 8, 2000, Hadley again demanded the policy limits and set a deadline of December 13, 2000 for Founders to offer its policy limits for the claim.  (Joint Stip. ¶ 8, Joint Stip. Ex. F.)  On December 13, 2000, Gargano received a letter from Frontier Adjusters indicating that Humphrey was not eligible for temporary total disability benefits.  (Plaintiffs' Ex. 2.)

Hadley made another demand for the policy limits on December 18, 2000, stating that the limits must be tendered by December 19, 2000, or they would not be accepted.  (Joint Stip. ¶ 10; Joint Stip. Ex. G.)

Gargano contacted Hadley by telephone on December 20, 2000, and informed him that she had just received the December 18, 2000, request because she had been out of the office with the flu. (Joint Stip. ¶ 11.) The parties dispute whether, during the telephone conversation, an extension of the settlement deadline was granted by Hadley. (Aff. of Frederick Hadley, Plaintiff's Ex. 3 ¶ 4; Aff. of Nancy Gargano ¶ 11.) However, although Hadley's affidavit states that no extension was given, Hadley's co-counsel in the case at bar and in *Humphrey v. Est. of Clanton*, W. Scott Montross, stated that an extension was given on December 20, 2000. (Tr. of Proceedings of Dec. 19, 2002, *Humphrey v. Est. of Clanton*, pg. 58, lines 4-13.)

Sometime on December 22, 2000, Gargano sent a letter to Hadley requesting that an enclosed "Bodily Injury Only Release of All Claims" be executed by Humphrey in exchange for a settlement check in the amount of the policy limits. (Joint Stip. ¶ 12; Joint Stip. Ex. H.) At 2:55 p.m. on December 22, 2000, Hadley sent a fax to Gargano withdrawing the offer to settle for the policy limits. (Joint Stip. ¶ 12; Joint Stip. Ex. J.) After Founders received Hadley's December 22, 2000, fax, Founders Vice President Jane Abed sent a fax to Hadley informing him that Founders was accepting his offer to settle Humphrey's claim for the $25,000 policy limit and that Founders would forward the funds to Hadley upon receipt of an executed release of claims. (Joint Stip. ¶ 13, Joint Stip. Ex. I.) Hadley did not immediately inform Plaintiffs of Founders' settlement offer.

-7-

(Defendant's Ex. A.)  The decision to reject Founders' offer was made by Hadley.  (Dep. of George Humphrey in *Humphreys v. Estate of Clanton*, p. 193-94.)  The Humphreys never returned an executed release of claims to Founders.  (Joint Stip. ¶ 14.)

On August 2, 2001, the Humphreys filed a tort lawsuit against the Estate of Clanton in the Lake County, Indiana, Superior Court.  (Joint Stip. ¶ 15; Joint Stip. Ex. K.)  The Humphreys and the Estate of Clanton entered into an Agreed Judgment in the amount of $787,500 on November 6, 2003, which was approved by the court on November 12, 2003.  (Joint Stip. ¶ 18; Joint Stip. Ex. M.)  In addition, the Humphreys and the Estate of Clanton entered into an Assignment Agreement & Covenant Not to Execute whereby the Estate of Clanton assigned to the Humphreys all of its rights and claims against Founders in exchange for a covenant not to enforce the Agreed Judgment against the Estate of Clanton.  (Joint Stip. ¶ 19; Joint Stip. Ex. N.) On January 28, 2005, the Humphreys filed the lawsuit that is the subject of this Motion for Summary Judgment.

### Breach of Duty Claims

Indiana law imposes a duty on insurance companies to deal in good faith with their insureds.  *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993).  The insurer's duty of good faith and fair dealing includes "the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in

-8-

making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id*. The insurer's duty also includes the duty to act in good faith when attempting to settle claims against an insured. *See Economy Fire & Casualty Co. v. Collins*, 643 N.E.2d 382 (Ind. Ct. App. 1994).

Although many states recognize a general settlement duty, the nature of the duty differs from jurisdiction to jurisdiction. While some states require that an insured show bad faith to recover on a claim for breach of the duty to settle, others require merely a showing of negligence. LEE R. RUSS, 14 COUCH ON INSURANCE §§ 206:5-206:6 (3d. ed. 1995).  In their briefs, both parties cite to the Seventh Circuit's opinion in *Certain Underwriters of Lloyd's v. General Accident Ins. Co.,* as expressing the correct standard for breach of the duty of good faith and fair dealing:  under Indiana law, an insurer is liable to its insured for a judgment that exceeds policy limits when the insurer refuses, in negligence or bad faith, to settle within the policy limits.  909 F.2d 228, 231 (7th Cir. 1990).

However, *Certain Underwriters* was decided before *Erie*, the case in which the Indiana Supreme Court first recognized a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith. *See Erie*, 622 N.E.2d at 519.  Although *Erie* did not expound on what standard would be used to determine whether an insurer has breached its duty of good faith, every post-*Erie* Indiana case this

-9-

Court has found uses only a bad faith standard, rather than a "negligence or bad faith" standard. *Masonic Temple Assoc. of Crawfordsville v. Ind. Farmers Mutual Ins. Co.*, 779 N.E.2d 21, 26 (Ind. Ct. App. 2002); *Economy Fire*, 643 N.E.2d at 386. In particular, the *Economy Fire* court used a bad faith standard to determine whether an insurer had breached its duty by failing to settle. 643 N.E.2d at 386.

In *Certain Underwriters*, the Seventh Circuit stated that insurers in Indiana have a "duty to act with due care and in good faith." Subsequently, the Indiana Supreme Court held that insurers in Indiana have a duty "of good faith and fair dealing." As such, the "negligence or bad faith" standard, opined in *Certain Underwriters*, is likely not a correct statement of Indiana law today. Whether the proper standard in Indiana is good faith or due care is not determinative in the case at bar, however, because the Court finds that Plaintiffs have failed to designate sufficient evidence to meet either standard.

<u>Bad Faith Standard</u>

Plaintiffs face a difficult hurdle in showing an insurance company's bad faith in Indiana. Poor judgment and negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. *Masonic Temple Assoc.*, 779 N.E.2d at 29. A finding of bad faith requires evidence of a state of mind reflecting

dishonest purpose, moral obliquity, furtive design, or ill will. *Hoosier Ins. Co. v. Audiology Foundation of America*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001). Consequently, a bad faith determination inherently includes an element of culpability. *Id*.

Founders accepted liability on Humphrey's claim and notified Hadley of such on November 16, 2000. As such, this case does not involve a situation where an insurance company denies liability on a claim. Rather, this case involves allegations that an insurance company breached its duty to the insured by failing to pay the claim within the insured's self-imposed deadline.

The designated evidence shows that Founders and Hadley were communicating with each other to negotiate a settlement of Humphrey's claim. The Court disagrees with Humphrey's argument that the parties never negotiated. The term "negotiate" means "[t]o communicate with another party for the purpose of reaching an understanding." BLACK'S LAW DICTIONARY 1059 (7th ed. 1999). Gargano responded to Hadley's November 15, 2000 demand for Founders to accept coverage and pay the policy limits by leaving a message for Hadley on November 16, 2000 informing him that Founders would accept coverage for the loss, but that the November 17, 2000 deadline did not provide Founders with reasonable time to evaluate the demand. In addition, Founders requested a copy of Humphrey's medical bills so it could determine the amount for which the claim should be settled, which Hadley provided on November 21, 2000. On November 30, 2000, Founders informed Hadley

that it was still processing its injury evaluation for Humphrey and that it would make a settlement decision in the near future. Between November 21 and December 22, Hadley made two written demands for payment of the policy limits in which he imposed deadlines of December 13, 2000 and December 19, 2000. On December 20, 2000, Gargano contacted Hadley by telephone to inform him that she had been out of the office and was still working on Humphrey's claim. Hadley's co-counsel has conceded that another extension of the deadline was granted to Founders during that conversation. Finally, Founders sent Hadley a letter and a fax on December 22, 2000, informing him that it would tender the policy limits in exchange for an executed release of claims. Humphrey was not immediately made aware of Founders' December 22 settlement offer and it was never accepted.

There is no evidence suggesting that Founders was simply ignoring Hadley's requests. Furthermore, there is no evidence that Founders acted with a state of mind "reflecting dishonest purpose, moral obliquity, furtive design, or ill will." See e.g., *Hoosier Ins.*, 745 N.E.2d at 310. As such, no reasonable jury could find that Founders' failure to pay the claim within 31 days after receiving proof of Humphrey's injuries constitutes bad faith.

<u>Negligence or Bad Faith Standard</u>

Although no Indiana court has applied the "negligence or bad faith" standard in a failure to settle case, the Seventh Circuit has

applied it in *Meixell v. Superior Ins. Co.*, a case in which both parties rely upon, and a case wherein Illinois law controlled. Under this standard, an insured "must sufficiently show a breach of duty and demonstrate that the breach was the legal cause of the harm to the insured." *Meixell*, 230 F.3d 335, 337 (7th Cir. 2000) (citing *Adduci v. Vigilant Ins. Co.*, 424 N.E.2d 645 (Ill. App. Ct. 1981)). To show causation, the insured must be able to demonstrate why the offer of settlement made by the insurer after the deadline could not have been accepted. *See Id.* (citing *Phelan v. State Farm Ins.*, 448 N.E.2d 579 (Ill. App. Ct. 1983)).

In *Meixell*, an insurance company rejected a settlement offer made by a claimant against the company's insured for injuries resulting from an automobile accident. More than three months after the rejection, the company decided to accept the claimant's terms and made a settlement offer to the claimant. The claimant rejected the settlement and filed suit against the insured, eventually obtaining a verdict in excess of the insurance policy limits and receiving an assignment of the insured's claims against the insurer. The claimant then filed suit against the insurer for breach of the duty of good faith owed by the insurer to its insured. *Id*. at 336-37. The district court dismissed the lawsuit, finding that the claimant could not show that the insurer's conduct proximately caused the excess verdict. *Id*. at 337.

The Seventh Circuit affirmed the district court's dismissal of

claimant's suit.  The court found that the claimant could not show that the insurance company breached its duty to the insured because there were no facts showing why the insurer's settlement offer could not be accepted or that the insurer failed to protect the insured's interests.  First, the court examined whether the claimant could show bad faith on the part of the insurance company.  "When an insurance company offers to settle and is time line for no reason, it does not constitute bad faith."  *Id*.  The court found that the claimant could offer no explanation as to why he could not accept the settlement offer or how he would be prejudiced if he had accepted the offer.  The court rejected the claimant's argument that negotiations had ceased after the insurer's initial rejection because the claimant had never established a time line for settlement negotiations.  Because the insurer believed that negotiations were ongoing and offered to settle for the policy limits before the claimant filed suit, within two months of the initial rejection, the court found that the claimant could not show that the insurer acted in bad faith.  *Id*. at 337-38. In addition, the court found the claimant failed to present any evidence that the insurer placed its interests above the insured's. Accordingly, the court affirmed the motion to dismiss claimant's lawsuit.

   The *Meixell* analysis of the insurer's duty of good faith and factual showing required to demonstrate a breach of that duty is instructive.  Founders argues that *Meixell* requires that Humphrey show

why the settlement offer it made on December 22, 2000 could not have been accepted. Humphrey argues that the facts of *Meixell* are distinguishable because the plaintiff in *Meixell* did not establish a settlement deadline as Humphrey did in the present case. However, although there were settlement deadlines established in the present case, the designated evidence shows that there were further negotiations between Founders and Humphrey after the December 19, 2000 deadline had passed. Moreover, Founders had reason to believe that the deadline had been extended. Founders eventually offered to settle for the policy limits within three days, at most, of the expiration of Humphrey's self-imposed deadline and more than seven months before Humphrey filed suit against Clanton's estate. Plaintiffs have not designated evidence showing why they could not accept Founders' offer or that Founders placed its interests above Clanton's. As such, Humphrey cannot show that Founders breached its duty of good faith.

The "negligence or bad faith" standard was also applied in *Adduci*, a case containing facts similar to those of the case at bar. *See Adduci*, 424 N.E.2d 645. In *Adduci*, an insured was involved in an automobile accident on May 10, 1975. The insurer's defense counsel was provided with a copy of the claimant's medical bills on November 3, 1975. On April 7, 1976, counsel for the claimant made a written demand to the insurer requesting payment of the full policy limits in exchange for a covenant not to sue the insured. The written demand contained a 28-day deadline within which the offer could be accepted.

-15-

On June 18, 1976, 44 days after the expiration of claimant's offer, the insurer offered to pay the policy limits in settlement of the claim. The claimant rejected the insurer's offer. At trial, the claimant obtained a verdict in excess of the insurance policy limits. The claimant, who accepted an assignment from the insured of his right to sue the insurer, filed a lawsuit against the insurer alleging that the insurer breached its duty to discharge its obligations to the insured reasonably and in good faith and that the insurer breached its duty to treat the insured's interests as paramount to its own. *Id*. at 647-48.

The *Adduci* court affirmed a lower court ruling that dismissed the complaint because it failed to allege facts demonstrating a breach of the insurer's duty to its insured. *Id*. at 649. Although the court recognized that in certain situations an insurer's failure to respond to a settlement demand made by a claimant could constitute a breach, the facts of the case showed that the insurer did respond to the claimant's demands. Even though the insurer's response to the settlement offer came over 40 days after the passage of the claimant's self-imposed deadline, "[n]o facts sufficiently indicate why the claimants found it impossible to accept the offer at this time, so as to fairly place the blame for failure of settlement upon Insurer." *Id*. The court found that the facts alleged in the complaint were "insufficient as a matter of law to demonstrate that the activities of the Insurer constituted a breach of its duty to Insured." *Id*.

Although *Adduci* involved a motion to dismiss, rather than a motion for summary judgment, the analysis can be applied to the case at bar. Factually, the conduct of the insurer in *Adduci* is more dubious than Founders' conduct in this case. Whereas the insurer in *Adduci* made its settlement offer 44 days after the claimant's offer expired, Founders made its offer, at most, three days after Humphrey's offer expired. Moreover, Founders never indicated that it would not pay the policy limits. If the facts alleged in *Adduci* were insufficient as a matter of law to demonstrate a breach of duty by the insurer, the facts of the present case are similarly insufficient to demonstrate a breach of duty by Founders.

In the case at bar, the designated evidence shows that Founders did respond to the settlement demand. There is no evidence indicating that Founders refused to pay the claim. As stated above, Gargano and Hadley exchanged multiple letters and conversations from November 6, 2000 through December 22, 2000. As in *Adduci*, there is no evidence indicating why Humphrey was unable to accept Founders' December 22, 2000, offer such that a jury could fairly place blame for the failure to settle upon Founders. Therefore, this Court finds that the facts revealed by the designated evidence are insufficient as a matter of law to demonstrate that Founders' conduct constituted a breach of its duty to Clanton.

In sum, there are no genuine issues of material fact. Plaintiffs

have not designated any evidence indicating that Defendant breached the duties it owed to its insured. Consequently, Defendant is entitled to judgment as a matter of law with respect to Plaintiffs' breach of duty claims.[1]

Punitive Damages

Compensatory damages are a prerequisite to an award of punitive damages; without them, there can be no punitive damages. *Sullivan v. American Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 140 (Ind. 1992). Because the Court has found that Defendant is entitled to summary judgment with respect to Plaintiffs' claims for compensatory damages, the Court also finds that Defendant is entitled to summary judgment with respect to Plaintiffs' punitive damages claim.

CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary

---

[1] Notably, the statute of limitations issue, the effect of the agreed judgment, as well as the possibility of Plaintiffs' claims being precluded by the original insurance policy, would usually be threshold questions. However, upon review of the pleadings, these issues were treated in a rather cursory fashion by the parties. As such, while any of these issues could have been dispositive, the parties failed to provide sufficient undisputed factual support to establish – as to any of these issues – that there was no genuine issue of material fact and they were entitled to judgment as a matter of law.

Judgment is **GRANTED**.  The Clerk is **ORDERED** to **DISMISS** this case with prejudice.

**DATED:  April 7, 2006**             /s/RUDY LOZANO, Judge
                                      United States District Court